**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MIDDLESEX WATER COMPANY,** | : | **CIVIL ACTION NO. 3:23-CV-483** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA PUBLIC UTILITY COMMISSION, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiff Middlesex Water Company ("Middlesex") returns to this court to renew its complaint against the Pennsylvania Public Utility Commission ("PUC") and its chairpersons and commissioners for alleged constitutional violations. Middlesex also filed an emergency motion for preliminary injunction, alleging a November 2021 PUC order violates its constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution, as well as the Dormant Commerce Clause. The PUC and intervenor-defendant Aqua Pennsylvania, Inc. ("Aqua"), now move to dismiss. We will grant defendants' motions.

## I. Factual Background & Procedural History

Middlesex originally came to this court in November 2021 seeking declaratory and injunctive relief under 42 U.S.C. § 1983 for alleged constitutional violations. See Middlesex Water Co. v. Pa. Pub. Util. Comm'n, No. 3:21-CV-1981, Doc. 1 (M.D. Pa. 2021) (Conner, J.). Middlesex sought to enjoin the PUC's November 18, 2021 order requiring the company to place $1.675 million into escrow for infrastructure remediation as a prerequisite to the sale of its wholly owned

subsidiary, Twin Lakes Utilities, Inc. ("Twin Lakes")—a water public utility servicing Sagamore Estates in Shohola Township, Pike County—to Aqua, which assumed receivership of Twin Lakes' water system in January 2021. See id. We abstained from hearing the matter pursuant to the doctrine of Burford v. Sun Oil Co., 319 U.S. 315 (1943), to allow the Commonwealth Court of Pennsylvania to adjudicate Twin Lakes' petition for review. See Middlesex, No. 3:21-CV-1981, Docs. 49, 50.

The Commonwealth Court affirmed the PUC's order in August 2022. See Twin Lakes Utils., Inc. v. Pa. Pub. Util. Comm'n, 281 A.3d 384 (Pa. Commw. Ct. 2022). The court recognized that this case presented unique factual circumstances: the PUC unambiguously granted Middlesex a certificate of public convenience in 2009, but it apparently never issued the certificate, so Twin Lakes' status was ambiguous. See id. at 386-87, 395.[1] Notwithstanding these unusual facts, the court concluded (1) the PUC cannot pierce the corporate veil between Middlesex and

[1] The PUC's March 2, 2009 order approving Middlesex's purchase of the Twin Lakes' water system states that "upon receipt of a notice of closing, *a Certificate of Public Convenience shall be issued* pursuant to Section 1101 of the Public Utility Code, 66 PA. CONS. STAT. § 1101, *authorizing Middlesex Water Company* to begin to offer, render, furnish, or supply water service to the public in the Sagamore Estates development, located in Shohola Township, Pike County." See Twin Lakes, 281 A.3d at 386 (citation omitted; emphasis in original). Middlesex suggests that its certificate of public convenience for the Twin Lakes' water system may not have been "a duly executed, valid, and binding [certificate]" because it was never formally issued. (See Doc. 37 at 33 & n.11). However, as discussed *infra*, the state court disagreed. See Twin Lakes, 281 A.3d at 396 ("[Middlesex] was the only corporation entity authorized to offer water service in Pennsylvania, which required a certificate of public convenience. Middlesex 'waived any and all objections to the terms and conditions of such certificate,' 66 PA. CONS. STAT. § 1103(a), including the requirement that it escrow $1.675 million.").

Twin Lakes because Middlesex is not the "corporate 'alter ego' of Twin Lakes for all purposes," see id. at 390-91; (2) in any event, Middlesex entered the Pennsylvania utility marketplace of its own volition, thereby subjecting itself to the PUC's jurisdiction as a foreign corporation providing utility service in Pennsylvania, see id. at 395-96; (3) the Public Utility Code grants the PUC authority to impose conditions "as it may deem to be just and reasonable" upon a grant of a certificate of public convenience, see id. at 390 (quoting 66 PA. CONS. STAT. § 1103(a)); (4) Middlesex, through Twin Lakes, effectively initiated the Section 529 proceeding that resulted in the escrow order, "which fully comported with due process," see id. at 396; (5) the escrow order was within the PUC's power "by necessary implication," see id. at 395 (quoting Feingold v. Bell of Pennsylvania, 383 A.2d 791, 794 (1977); and (6) as a holder of a certificate of public convenience, Middlesex "waived any and all objections to the terms and conditions of [its] certificate," including the escrow requirement, see id. at 396 (quoting 66 PA. CONS. STAT. § 1103(a)). The Pennsylvania Supreme Court denied Twin Lakes' petition for allowance of appeal. See Twin Lakes Utils., Inc. v. Pa. Pub. Util. Comm'n, 293 A.3d 566 (Pa. Mar. 7, 2023) (*per curiam*).

As noted, Middlesex returned to this court soon after the state supreme court denied Twin Lakes' petition and filed a motion for preliminary injunction against the PUC defendants. (See Doc. 4). We permitted Aqua to intervene as a defendant, and the PUC and Aqua now oppose Middlesex's motion and move to dismiss its complaint. The motions are fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal

conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. Discussion

The PUC and Aqua move to dismiss Middlesex's motion and complaint[2] on similar grounds. They argue that (1) the court should dismiss the motion for lack of

[2] Middlesex brings six constitutional claims. It contends that the escrow payment violates the Fourteenth Amendment's guarantee of substantive due process (Count I), (Doc. 1 ¶¶ 159-174); the PUC's order violates procedural due process because Middlesex was not afforded notice and a meaningful opportunity to be heard in the state proceedings (Count II), (id. ¶¶ 175-198); the payment violates the Equal Protection Clause because it is based solely on an arbitrary classification of Middlesex as Twin Lakes' corporate parent (Count III), (id. ¶¶ 199-204); the payment violates the Dormant Commerce Clause because it subsidizes a Pennsylvania public utility at the expense of a New Jersey public utility (Count IV), (id. ¶¶ 205-222); the escrow payment violates the Fifth Amendment as a taking of private property for public use without just compensation (Count V), (id. ¶¶ 223-235); and the payment constitutes an unconstitutional condition that, to Middlesex's knowledge, has never been imposed before (Count VI), (id. ¶¶ 236-252). Middlesex contends it will suffer immediate and irreparable harm absent injunctive relief because defendants enjoy Eleventh Amendment immunity in suits for money damages and the company will have no recourse to recover the lost funds, (Doc. 23 at 57-59); the PUC will not suffer irreparable harm by maintaining the status quo, which has continued since the Commonwealth Court stayed the PUC's November 2021 order, (id. at 59-60); and the public interest favors granting an injunction to vindicate constitutional rights, (id. at 60). Middlesex alternatively seeks damages to ensure it receives just compensation. (Doc. 1 at 3).

subject matter jurisdiction pursuant to the Rooker-Feldman doctrine;[3] (2) claim and issue preclusion bar consideration of Middlesex's claims; (3) Middlesex cannot demonstrate likelihood of success on the merits or irreparable injury; (4) third parties will be harmed by an injunction; (5) Middlesex fails to state a claim upon which relief can be granted; and (6) Middlesex should be required to post a bond. We begin our analysis with defendants' arguments regarding claim preclusion.

### A. Claim Preclusion

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" Taylor v. Sturgell, 553 U.S. 880, 892 (2008).[4] Claim preclusion applies when there is identity of (1) the lawsuit's subject matter, (2) the causes of action, (3) the parties to the action, and (4) the capacity of the parties to sue or be sued. See Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006) (citing Bearoff v. Bearoff Bros., Inc., 327 A.2d 72, 74 (Pa. 1974)).[5] The doctrine applies to claims "actually litigated"

---

[3] See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust, Co., 263 U.S. 413 (1923).

[4] "Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" Taylor, 553 U.S. at 892 n.5 (citation omitted).

[5] The federal Full Faith and Credit statute provides, in pertinent part, that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738; see also Turner, 449 F.3d at 548 (citing Lance v. Dennis, 546 U.S. 459, 466 (2006)). Decisions of state agencies responsible for utility regulation "should be given preclusive effect to the extent afforded under [Pennsylvania] law." See Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc., 159 F.3d 129, 135, 139-40 (3d Cir. 1998).

and "to claims which could have been litigated during the first proceeding if they were part of the same cause of action." See id. (quoting Balent v. City of Wilkes–Barre, 669 A.2d 309, 313 (Pa. 1995)). Minor differences in corporate form, parties, or allegations contrived only to obscure a second trial on the same cause between the same parties will not defeat claim preclusion. See Stevenson v. Silverman, 208 A.2d 786, 788 (Pa. 1965) (citation omitted).

Claim preclusion also applies to an entity that was in privity with a party to the prior proceeding. See Turner, 449 F.3d at 548 n.11 (citing Stevenson, 208 A.2d at 788). Privity exists between a party and a nonparty when, *inter alia*, the nonparty was "adequately represented" by a party to the prior proceeding that shared its interests, or the nonparty "assume[d] control" over the prior litigation. See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 312 (3d Cir. 2009) (citing Taylor, 553 U.S. at 894-95); see also Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 329 n.19 (1955) (noting three "orthodox categories of privies" include (1) "those who control an action although not parties to it," (2) "those whose interests are represented by a party to the action," and (3) "successors in interest").

We find that all four elements of claim preclusion are met. First, the subject matter of the state and federal lawsuits is identical: they both challenge the constitutionality of a provision of the PUC's November 18, 2021 order requiring Middlesex to place $1.675 million into escrow. Compare Doc. 1 at 1-2, with Twin Lakes, 281 A.3d at 386. Second, the causes of action are the same. Middlesex argues it brings a separate and distinct cause of action because the relief it seeks—*i.e.*, just compensation—was unavailable in state court. (See Doc. 37 at 20-23). But

our court of appeals has squarely held that "[i]t is not significant that the relief obtainable in the two forums varies to some degree." See Gregory v. Chehi, 843 F.2d 111, 118-19 (3d Cir. 1988) (disapproving district court's denial of claim preclusion merely because damages were unavailable in state forum). We find that Middlesex's instant request for just compensation in the form of damages—a remedy unavailable in state court or from the PUC directly—does not transform its federal claims into separate causes of action for purposes of claim preclusion.

Third, the Commonwealth Court all but determined Middlesex was in privity with Twin Lakes. The court noted the identity of corporate officers, general counsel, and business addresses, along with Middlesex's control of capital, stock ownership, billing and meter readings, and managerial decisions, see Twin Lakes, 281 A.3d at 390, and it expressly concluded Middlesex "participated in the Section 529 proceeding, both before the PUC and this Court, vigorously challenging the escrow condition," see id. at 396 ("Middlesex effectively initiated the instant Section 529 proceeding."). We find that Middlesex was in privity with Twin Lakes in the prior state court proceedings because Middlesex effectively directed and controlled the action through Twin Lakes, which "adequately represented" Middlesex's interests, see Nationwide, 571 F.3d at 312 (citation omitted), by "vigorously challenging the escrow condition" throughout the proceedings, see Twin Lakes, 281 A.3d at 396. Lastly, the parties' capacity to sue and be sued is identical to that of the prior proceedings. In the prior lawsuit, the Commonwealth Court reviewed the PUC's order to determine "whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are,

or are not, supported by substantial evidence." See Twin Lakes, 281 A.3d at 389 n.5 (citation omitted); see also id. ("As to questions of law, this Court's scope of review is plenary, and its standard of review is *de novo*.") (citation omitted). Middlesex's capacity to sue or be sued is sufficiently identical to its capacity in the prior state court proceeding via Twin Lakes.

Four of the six claims Middlesex raises in the matter *sub judice* (Counts I, II, V, and VI) were litigated and subject to a final state judgment; the other two claims (Counts III and IV) could have been litigated but were waived or forfeited. See Turner, 449 F.3d at 548 (quoting Balent, 669 A.2d at 313). Accordingly, we will grant defendants' motions to dismiss with prejudice because plaintiff's claims are barred by the doctrine of claim preclusion.

**B. Issue Preclusion**

Assuming, *arguendo*, a want of identity between the two actions, we also find that Middlesex's claims in Counts I, II, V, and VI are barred by the doctrine of issue preclusion. Issue preclusion applies when (1) the issue previously decided is identical to the one now presented; (2) there was a final merits adjudication; (3) the party against whom the doctrine is asserted was a party or was in privity with a party in the prior case; (4) that party had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. See Metro. Edison Co. v. Pa. Pub. Util. Comm'n, 767 F.3d 335, 350 (3d Cir. 2014).

As discussed *supra*, elements one and two are met because the constitutionality of the PUC's escrow requirement was adjudicated on the merits in

state court. See Twin Lakes, 281 A.3d at 389 n.5, 396. Elements three and four are also present. Middlesex was in privity with Twin Lakes and had a full and fair opportunity to litigate the issue because, as the Commonwealth Court noted, Middlesex "directed [Twin Lakes] to file the Section 529 petition. It was not a passive investor. It participated in the Section 529 proceeding, both before the PUC and this Court, vigorously challenging the escrow condition. Middlesex effectively initiated the instant Section 529 proceeding, which fully comported with due process." See id. at 396. In other words, Middlesex "assume[d] control over the [prior] litigation" and was "adequately represented" throughout the proceedings by its wholly owned subsidiary, Twin Lakes. See Taylor, 553 U.S. at 894-95 (citations omitted). The fifth element of issue preclusion similarly is satisfied because the Commonwealth Court's decision upholding the escrow condition—which was the *only* challenge Twin Lakes raised in that proceeding—was essential to the court's judgment and necessarily rejected the constitutional claims Middlesex now raises. See Twin Lakes, 281 A.3d at 386. We will grant defendants' motions to dismiss Counts I, II, V, and VI with prejudice on the alternative ground that plaintiff's claims are barred by issue preclusion.

**C. Middlesex's Remaining Claims (Counts III and IV)**

Middlesex brings equal protection and Dormant Commerce Clause claims in Counts III and IV, respectively. (See Doc. 1 ¶¶ 199-222). Again, assuming *arguendo* that Middlesex's lawsuit is not barred by the doctrine of claim preclusion, we find these remaining counts fail to plausibly state a claim upon which relief may be granted. Middlesex proceeds on a class-of-one theory for its equal protection claim.

(See id. ¶¶ 200, 201). To state an equal protection claim under this theory, a plaintiff must allege (1) the defendant treated it differently from other similarly situated individuals, (2) intentionally, and (3) without a rational basis for the difference in treatment. See Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). But Middlesex cannot identify similarly situated individuals that the PUC treated differently. The circumstances presented here—*e.g.*, a utility seeking Section 529 relief despite having a financially capable, controlling parent that alone sought and received a certificate of public convenience—are *sui generis*. See Twin Lakes, 281 A.3d at 387 ("The [administrative law judge] acknowledged that '[n]ever before' has the PUC been asked to evaluate a Section 529 application submitted by a Pennsylvania small water utility 'that is also owned by a larger corporate entity.'") (citation omitted); see also id. at 396 ("Our holding to uphold the escrow condition imposed in the Final Order is limited to the unique factual circumstances of this case."). The unique circumstances of this case preclude Middlesex from plausibly alleging that the PUC treated it differently than similarly situated individuals. This fact is fatal to Middlesex's equal protection claim.

Middlesex's Dormant Commerce Clause claim is similarly deficient. It alleges that the escrow condition contained in the PUC's order punishes an out-of-state corporation in favor of an in-state utility. (See Doc. 1 ¶ 209). Claims under the Dormant Commerce Clause require proof of "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." See Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd., 462 F.3d 249, 261 (3d Cir. 2006) (quoting Granholm v. Heald, 544 U.S. 460, 472 (2005)). A threshold

question is whether the challenged state action "discriminates against interstate commerce in either purpose or effect." See Heffner v. Murphy, 745 F.3d 56, 70 (3d Cir. 2014) (citation omitted). If so, heightened scrutiny applies; if not, we assess whether the burdens on interstate commerce substantially outweigh the in-state benefits using the balancing test announced in Pike v. Bruce Church, Inc., 397 U.S. 137 (1970). See Heffner, 745 F.3d at 70-71 (citations omitted).

As an initial matter, the PUC order does not discriminate against interstate commerce in purpose or effect; rather, it regulates a foreign corporation conducting regulated activity within the Commonwealth. See Twin Lakes, 281 A.3d at 396 ("In sum, Middlesex, on its own volition, entered the Pennsylvania utility marketplace, thereby subjecting itself to the PUC's jurisdiction."); see also id. at 390 ("[T]he PUC has the authority 'to supervise and regulate all public utilities doing business' in the Commonwealth, whether organized as a Pennsylvania or a foreign corporation.") (quoting 66 PA. CONS. STAT. § 501(b)). Heighted scrutiny is therefore inappropriate. See Heffner, 745 F.3d at 70 (citing Pike, 397 U.S. at 137). Turning to the Pike balancing inquiry, we find that the $1.675 million burden on Middlesex does not outweigh, let alone "substantially outweigh," the putative local benefits because, absent the escrow payment, Aqua, its shareholders, its current ratepayers, and the Sagamore Estates ratepayers will bear the entire burden of remediating and repairing the unsafe and inadequate water system at issue—approximately $4.8 million. (See Doc. 30-9, November 18, 2021 PUC order at 6); see also Twin Lakes, 281 A.3d at 393 (noting "the demonstrated and prolonged failure of Twin Lakes and Middlesex, whether viewed separately, or as one in [*sic*] the same, to furnish the

necessity of safe and adequate water service to the customers of the Twin Lakes system"). Middlesex has failed to plausibly allege a claim in either Count III or IV.

Courts generally must grant leave to amend before dismissing a complaint unless amendment would be inequitable or futile. See Phillips, 515 F.3d at 245 (citation omitted). Here, Middlesex does not seek leave to amend nor has it explained "how an amended pleading would cure the defects in [its] original complaint." See King *ex rel.* Cephalon Inc. v. Baldino, 409 F. App'x 535, 539 (3d Cir. 2010) (nonprecedential);[6] (see also Doc. 43 at 1 ("As reflected in the parties' briefs, the issues the Court will be required to address at the [May 24, 2023 preliminary injunction] Hearing are almost exclusively legal.")). The deficiencies identified herein are purely legal in nature and granting Middlesex leave to amend would be futile. Accordingly, we will grant defendants' motions to dismiss Counts III and IV with prejudice on the alternative ground that plaintiff has failed to state a claim upon which relief may be granted.

[6] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. However, we cite this nonprecedential decision because we have carefully considered the decision and we are persuaded by the panel's *ratio decidendi*.

## IV. Conclusion

We will grant defendants' motions to dismiss Middlesex's complaint with prejudice and deny Middlesex's motion for preliminary injunction as moot. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated: January 18, 2024